C. Keith Greer, SBN: 135537
GREER & ASSOCIATES, A.P.C.
16855 West Bernardo Drive, Suite 255
San Diego, CA  92128
Tel:     (858) 613-6677
Fax:    (858) 613-6680
Email: Keith.Greer@greerlaw.biz

Lisa J. Damiani, SBN: 137968
DAMIANI LAW GROUP APC
1059 Tenth Avenue
San Diego, CA 92101
Tel:     (619) 239-0170
Fax:    (619) 239-0216
Email: ljdamiani@damianilawgroup.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GAVITT, individually, on behalf of all others similarly situated and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No.: **'19CV1516 CAB AGS**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.**<br><br>JURY TRIAL DEMANDED |

Plaintiff, GEORGE GAVITT, ("Plaintiff") on his own behalf and on behalf of all others similarly situated, alleges the following against Defendant METROPOLITAN LIFE INSURANCE COMPANY ("Defendant" or "Met Life") based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys:

//

INSURANCE COMPANY ("Defendant" or "Met Life") based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys:

# I.
# INTRODUCTION

1.  This is a class action brought on behalf of persons in the state of California who purchased disability insurance coverage from Met Life under the terms of group disability policies offered to the Class Members through their private sector employers for certain Short-Term Disability ("STD") coverage as described herein. The Class definition is more fully set forth herein in the Class Action Allegations Section of this Complaint.

2.  Plaintiff, on behalf of himself, as a class, and on behalf of the general public, pursuant to Business & Professions Code §§17200-17208, also seek injunctive relief, restitution, and disgorgement of all premiums collected by Met Life from the Class in the form of insurance premiums charged for STD coverage, due to the fact that the conditions of the Insurance Contract, as more fully alleged herein, made the actual ability to claim benefits under the terms of the policy false and illusory, i.e., the claimed offsets by Met Life, prior to a claim being determined to be payable, largely or completely offset the benefits supposedly available under the policies, with the result being that the supposed benefits of the policy were effectively illusory. Stated simply Plaintiff and the Members of the Class were sold a product, and payed premiums, for an insurance product which provided essentially no increased value to Plaintiff and the Class in addition to the California SDI program in which they were already participating through mandatory payroll deductions.

//

## II.
## JURISDICTION AND VENUE

3.     Pursuant to Fed. R. Civ. P. 4(k)(1)(A), this Court has personal jurisdiction over Defendant Met Life because it either resides or has its principal place of business in this judicial district, or pursuant to the California "long-arm" statute, Cal. Civ. Proc. Code §410.10, Defendant Met Life has maintained deliberate minimum contacts with the State of California and/or its activities in this State have been so continuous and systematic that Defendant Met Life may be said to be present here.

4.     This Court has original jurisdiction of this action pursuant to provisions of the Class Action Fairness Act of 2005, specifically 28 U.S.C. §1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a Class action in which at least one Class Member is a citizen of a State different from that of the Defendant.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1441, 1446(a) and 84(c)(3). Plaintiff resides in the County of San Diego, California. Venue is also properly laid in this District pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391. The named defendant is an insurance company which is doing business in San Diego County. In addition, the unlawful acts alleged herein caused, and are causing, harm to Plaintiff and other individuals in San Diego County.

## III.
## PARTIES

**A.     Plaintiffs**

6.     Plaintiff GEORGE GAVITT is an individual residing in San Diego County, California. Plaintiff purchased an STD Insurance Policy from Defendant Met Life offered through a group plan with his employer, and is thus a Member of the Class as defined herein.

7.     Plaintiff will adequately represent the interests of the Class and will vigorously participate in this matter as a class action when certified. Plaintiff class representative has secured

legal counsel experienced in class action litigation, who will likewise adequately represent the Class.

B.     **Defendants**

8.     On information and belief, Plaintiffs allege that Defendant METROPOLITAN LIFE INSURANCE COMPANY (herein "Met Life") is incorporated under the laws of the State of Delaware, with its corporate headquarters located in New York, New York.  Met Life is qualified to do business in the State of California under California Corporate Number C0034217 and further is doing substantial business in the County of San Diego within this judicial district.

## IV.
## FACTUAL BACKGROUND

9.     Defendant Met Life offers STD Insurance Policies to residents of California, including Plaintiff, through policies of group insurance offered through their employers.

10.    The STD Insurance Policies are represented by Defendant Met Life to "help you protect your income and your lifestyle."

11.    Defendant Met Life represents that "The Short-Term Disability benefit replaces a portion of your pre-disability earnings, less other income that was actually paid to you during the same disability from other sources (e.g., state disability benefits, no fault auto laws, sick pay, vacation pay, etc.).  The Benefit amount is 70% of your pre-disability weekly earnings; subject to the plan's maximum weekly benefit of $2,300."

12.    The maximum duration of the Met Life STD benefits is 13 weeks.

13.    The California Employment Development Department ("EDD") operates a State Disability Insurance Program ("SDI") program which provides for payment of an SDI tax of 1% and SDI benefits of either 60% or 70% of pre-disability income for up to 52 weeks for short term disability.  The current maximum annual cost to an employee for California SDI is $1.149.67.

14. California permits employers to opt out of SDI and establish a private plan for Voluntary Disability Insurance (known as a "Voluntary Plan"), provided certain requirements are met. Among these requirements are that the Voluntary Plan's employee cost be no more than the cost for California SDI and that benefits paid by the Plan are at least equal to what SDI would pay.

15. On information and belief, and based upon the examples provided by Met Life as exemplars in the Disability Plan Contribution Worksheet, the Met Life STD Plan does not meet the qualifications for a Voluntary Plan in California because it: (a) costs the employee more than the cost for SDI (1.4% compared to 1%); and (b) offers lower maximum benefits (13 weeks versus 52 weeks).

16. Moreover, this action is specifically brought on behalf of California employees whose employers did not choose to opt out of SDI coverage and thus the STD Policy is duplicative of the SDI benefits already provided and paid for through the California SDI tax. As such, Plaintiff and the Members of the Class who purchased STD through Met Life employer group plans in California are paying premiums to receive zero additional coverage.

## V.
## ALLEGATIONS SPECIFIC TO PLAINTIFF GEORGE GAVITT

17. Plaintiff George Gavitt purchased a Met Life STD Insurance policy through his employer.

18. Plaintiff George Gavitt payed for his Met Life STD through payroll deductions totaling $59.11 every two weeks, or $1,536.86 per year. This amount is $387.19 in excess of the maximum premium that would be permitted for a Voluntary Plan under California law if Plaintiff George Gavitt's Employer had opted out of the state SDI program - which it did not. Thus, this entire premium amount was in addition to the amount that Plaintiff George Gavitt was already paying to state SDI through payroll deductions.

19. Plaintiff George Gavitt suffered a disability event on or about March 13, 2018. As a result, Plaintiff George Gavitt made a disability claim under his Met Life STD Policy and also under California SDI.

20. Met Life initially made payments to Plaintiff Gavitt under the terms of the STD Policy. However, on or about June 19, 2018 Met Life sent Plaintiff George Gavitt a letter in which Met Life claimed a right of deduction for California SDI payments made to Plaintiff. As a result, Met Life claimed that Met Life had overpaid Plaintiff by $2,687.34. In this same letter Met Life claimed that the total amount properly payable for the maximum period of the 13-week STD benefit was only $655.6, i.e., approximately $50 per week.

21. Met Life demanded that Plaintiff repay the claimed overcharges.

22. On or about June 21, 2018, Plaintiff called Met Life and spoke to the claim's specialist assigned to his claim. Plaintiff asked the Met Life representative why Met Life would sell a policy with such limited value in California. The Met Life representative stated to Plaintiff that he should contact his employer's human resources department for an explanation on why he would be sold useless disability insurance. 22. Plaintiff remained disabled and was unable to return to work until approximately November 13, 2018, during which time he received no additional STD benefits from Met Life, and in fact Met Life withheld monies owed to Plaintiff under his long term disability policy as an alleged offset of monies paid to Plaintiff under the STD Policy Met Life continues to pursue collections against Plaintiff.

## VI.
## CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action on behalf of himself and all others similarly situated as a Class action pursuant to Federal Rule of Civil Procedure 23. The Class is composed of and defined as follows:

"All persons in the State of California during the period from and including a date four years prior to the filing of this complaint, through and including the date of trial set for this action, and who, purchased STD Insurance Policies from Met Life through Group Insurance Policies offered through private entity employers which did not formally opt out of the California SDI Plan within the state of California."

**A.     Numerosity**

24.     The Members of the Class, as defined above, are so numerous that individual joinder of all Members is impractical. While the exact number of Class Members is currently unknown, Plaintiffs are informed and believe that the Class includes potentially hundreds of Members. Moreover, all Class Members are objectively ascertainable because each one of them was assigned a policy number by Defendant Met Life.

**B.     Common Questions Predominate**

25.     Common questions of law and fact exist as to all Class Members and predominate over any questions that affect individual Class Members. The common questions of fact include, but are not limited to, the following facts relevant to the determination of the primary issue, i.e., whether Plaintiff and the Members of the Class were sold and charged premiums for a false portrayed and illusory insurance product which provided Plaintiff and the Members of the Class little or no benefit beyond the benefits already provided to them by California SDI.

26.     Common questions of law include whether Met Life made, issued, circulated, or caused to be made, issued or circulated, any estimate, illustration, circular, or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby in marketing the STD Insurance Policies offered for sale by Met Life, and whether such statements constituted fraud in the marketing of such policies by Met Life in that

Met Life misrepresented that such policies would provide substantive benefits to California employees who were already covered by California SDI through the state SDI program administered by the California EDD.

### C. Typicality

27. Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff and the Class Members all paid premiums for what were represented to be substantial STD Insurance benefits and in fact were illusory in that they were largely, if not entirely, duplicative of the disability benefits already provided to Plaintiff and Class Members through the California SDI system.

### D. Adequacy of Representation

28. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff has no interests adverse to interests of the other Class Members. Proposed Class co-counsel, the LAW OFFICES OF GREER & ASSOCIATES, APC, and the DAMIANI LAW GROUP APC, are competent and experienced in litigation including substantial experience with Class action litigation.

### E. Superiority of Class Action

29. A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Members of the Class is impractical and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Class action treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum, simultaneously and efficiently for both the parties and the court system, without the unnecessary duplication of effort and expense that many individual actions would require. Furthermore, as the damages suffered by many individual

Members of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual Members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a Class action. The cost to the court system of adjudicating each individual claim would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## FIRST CLAIM FOR RELIEF

### (Unfair Business Practices - California Business & Professions Code §17200)

30. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-29, supra, as though fully set forth herein.

31. California Business and Professions Code §17200 et seq., the Unfair Competition Law ("UCL"), prohibits acts of unfair competition, including any unlawful, unfair or fraudulent business act or practice and any unfair, deceptive, untrue or misleading advertising. The acts of Met Life as alleged herein constitute unfair business practices under the UCL.

32. Met Life has engaged in unfair business practices by marketing its STD Insurance Policies to California employees with the promise that it provides substantial benefits to such California employees and will permit them to "protect [their] income and lifestyle."

33. In fact, because the value of the maximum STD Benefits payable weekly under the Met Life STD Policy is approximately equal to the benefits payable under California SDI, the Met Life STD Policy provides little to no additional security or insurance for Plaintiff and Members of the Class who are already receiving this income protection through California SDI.

//

//

34. Indeed, the Met Life SDT Policy affords substantially less protection than the California SDI program in that the Met Life Policy only pays benefits for a maximum of 13 weeks whereas state SDI pays those same benefits for a period of 52 weeks.

35. Despite the fact that the Met Life STD Policy provides illusory or at best negligible benefits to Plaintiff and Members of the Class covered by California SDI, Met Life charges premiums on such policies at a rate that is 140% of the rate charged by state SDI for greater protection.

36. The premiums charged by Met Life essentially serve no purpose whatsoever, as Met Life STD policyholders are not afforded any additional benefits as a result of the purchase of said policies.

37. The net result is that Met Life is accepting insurance premiums from Plaintiff and the Members of the Class in exchange for the assumption of little to no risk and little to ne benefit for Plaintiff and the Members of the Class.

38. Such actions by Met Life in collecting premiums for the assumption of no risk constitute an unfair business practice.

39. Met Life should be ordered to disgorge such unlawfully collected premiums and pay restitution to Plaintiff and the Members of the Class in the amount of all premiums unlawfully collected.

## SECOND CLAIM FOR RELIEF

### (Fraud)

40. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-39, supra, as though fully set forth herein.

//

41. Defendant Met Life specifically represented to Plaintiff and the Members of the Class that purchase of the Met Life STD Policy would provide substantial benefits to Plaintiff and the Members of the Class in that it would enable them to "protect [their] income and lifestyle." These representations were made in writing in materials that were provided to Plaintiff and Members of the Class prior to their purchase of Met Life STD Policies.

42. In fact, Defendant Met Life had actual knowledge that because the Met Life STD Policy provided weekly benefits that were substantially equivalent to the benefits already available to Plaintiff and the Members of the Class through California SDI, the Met Life STD Policy would provide substantially no benefit to Plaintiff and the Members of the Class.

43. Defendant Met Life also had actual knowledge that the maximum benefit period under the Met Life STD policies was substantially shorter than the California SDI benefit period with the net result that Plaintiff and the Members of the Class were virtually guaranteed to receive little to no value from the Met Life STD policies.

44. Defendant Met Life made these statements about the supposed benefits of the Met Life STD Policy with the intent to induce Plaintiff and the Members of the Class to purchase such policies, and to pay premiums to Met Life.

45. Plaintiff and the Members of the Class agreed to purchase such Met Life STD Policies and to pay premiums therefore in reliance on the representations that the policies would provide a substantial benefit to Plaintiff and the Members of the Class in the event of a disability.

46. Plaintiff and the Members of the Class justifiably relied on these representations and have been damaged in that they were thereby induced to pay premiums for essentially worthless STD Insurance Policies issued by Met Life.

//

47. Such actions by Defendant were undertaken with oppression, fraud or malice and therefore justify an award of exemplary or punitive damages.

### THIRD CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

48. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-47 supra, as though fully set forth herein.

49. By reason of the purchase of the Met Life STD policies there exists a contractual relationship between Plaintiff and the Members of the Class, and Defendant Met Life.

50. There exists in every contract an implied covenant of good faith and fair dealing that one party will not undertake any actions designed or intended to deprive the other party of the essential benefits of the bargain contained in the agreement.

51. In addition, the relationship of insurer and insured imposes a duty on Met Life to deal fairly and in good faith with Plaintiff and the Members of the Class.

52. The essential element of the bargain between Defendant Met Life and Plaintiff and the Members of the Class is that Defendant Met Life would provide benefits to Plaintiff and the Members of the Class in the event of a disability, in exchange for the payment of premiums.

53. Plaintiff and the Members of the Class fulfilled their end of the bargain through the payment of premiums.

54. Defendant Met Life did not fulfill its end of the bargain - and in fact never intended to fulfill its end of the bargain - by structuring the benefits under the STD Policy so that it would be inferior to, and largely, if not totally, offset by, the benefits also payable to Plaintiff and Members of the Class through California SDI.

//

55. Such actions by Defendant Met Life were a breach of the implied covenant of good faith and fair dealing and effectively deprived Plaintiff and the Members of the Class of the benefit of the bargain.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

1. For certification of a Plaintiff Class as set forth herein;
2. For restitution of all insurance premiums paid to Defendant by Plaintiff and Members of the Class;
3. For compensatory damages according to proof;
4. For an award of exemplary and punitive damages;
5. For attorneys' fees and costs of suit pursuant to California CCP §1021.5 and any other applicable grounds;
6. Prejudgment interest; and
7. Such other relief as the Court deems just and proper.

Dated: August 8, 2019                           Respectfully submitted,

                                                GREER & ASSOCIATES, APC


                                                s/C. Keith Greer
                                                C. Keith Greer
                                                Attorneys for Plaintiffs


                                                DAMIANI LAW GROUP APC



                                                s/ Lisa J. Damiani
                                                Lisa J. Damiani,
                                                Attorneys for Plaintiffs